[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this pending marital dissolution action, the plaintiff filed a motion for contempt dated August 19, 1998 in which she alleges inter alia that the defendant is in contempt of court for failing to comply with certain aspects of the April 8, 1998pendente lite orders.[1] The plaintiff claims that the defendant has failed to pay certain expenses on her behalf and on behalf of the parties' four children.
On April 8, 1998 the parties submitted a written stipulation to the court. It included a provision that the defendant would pay "the following weekly estimated expenses on behalf of the plaintiff, directly to the creditor or provider in lieu of child support". Court's Exhibit 1, Pendente Lite orders. There followed an itemization of expenses (e.g. mortgage on 62 Colony Road) together with an amount stated for each item to be paid. Included in this listing were the following two items: Private school tuition and summer camp for the children. Next to these items was the handwritten note: "joint decision." Id. The weekly estimated expenses for all items totaled three thousand, four hundred and eighteen ($3,418) dollars.
The court first addresses the issue of the children's private school tuitions. Prior to the court hearing, the parties fifteen year old child, Katie, had been admitted to Phillips Exeter CT Page 3590 Academy for the 1998-1999 academic year. Her acceptance had been applauded by both parents and her place had been secured by a check sent to Phillips by the defendant. Also prior to the April hearing, the defendant had issued a check to secure the place of the parties children Austin and Elizabeth at Kingswood Oxford School for the 1998-1999 school year. Notwithstanding the parties earlier decision to enroll the children at these schools, Dr. Kern has now taken the position that the language "Joint Decision" entitled him, subsequent to the April 8, 1998 hearing, to decline to pay the children's 1998-1999 private school tuitions. Both the evidence and the application of common sense belie this assertion. At the hearing, it was evident that by April 8, 1998 the parties had already decided to send Kathrine, Austin, and Elizabeth to Exeter and Kingswood Oxford for the (then) coming school year. The amount estimated on the agreement parallels the actual tuition costs. Prior to April 8, 1998 the parties had acted in concert to secure their children's places.
At the contempt hearing, the defendant called as a witness the plaintiff's former counsel, Attorney Patrick Dwyer, who stated unequivocally that there was no question in April that both parties had agreed that the children were bound for the stated private schools in the fall. The defendant's argument that the language "joint agreement" would have no meaning if he was then already bound to pay private school tuition is unavailing. It was he who insisted on this language at the time. It is substantially more reasonable to conclude that the defendant was seeking to protect himself from the predictive effect of a temporary order at the time of the final hearing than that he was attempting to hedge legally the moral commitment he and the plaintiff had already made on behalf of the children. The court concludes that at the time of the April 8, 1998 order, the parties had already jointly agreed to the attendance of the children at the stated private schools for the 1998-1999 academic year. The balance of tuition owed Exeter and Kingswood Oxford for the 1998-1999 academic year is the responsibility of the defendant to pay. He shall make arrangements directly with the schools to ensure prompt payment of these expenses so that none of the children is jeopardized with respect to his or her continuing enrollment.[2]
With respect to the itemization of weekly bills on the April 8, 1998 order, the court is unpersuaded by the defendant's argument that the amounts stated represent the upper limit of the defendant's obligation with respect to each item. To the contrary, CT Page 3591 it is evident that during the marriage the defendant paid all the household bills and, thus, was most familiar with their amounts. It was his attorney who prepared the document estimating the amount of each weekly expense. To the extent that the expenses may be higher than stated, that is a risk he undertook when he agreed to pay the expenses as itemized by item. In short, he undertook to pay the following bills: the mortgage on 62 Colony Road, the real estate taxes, fuel oil, electricity, gas, water, medical/dental insurance, automobile insurance, homeowners insurance, life insurance, tutors for minor children, security system, car lease, unreimbursed medical and dental expenses, synagogue, landscaping dry cleaning, cable t.v., house maintenance for any item over one hundred ($100) dollars, private school tuitions, and the basic phone bill. In addition to these items, which the parties estimated to total three thousand, four hundred and eighteen ($3418) dollars, the defendant agreed to pay the plaintiff sixteen hundred ($1600) dollars directly as weekly support, and he agreed to pay for one half the cost of sports equipment for the children.
While the defendant has made the weekly payments of sixteen hundred ($1600) dollars, he has failed to comply with the balance of the agreement.
Between the April hearing and December 30, 1998, the plaintiff paid sixty eight thousand, nine hundred and sixty ($68,960) dollars in expenses, including tuition payments, that were the defendant's obligation to pay pursuant to the April 8, 1998 order. Also, by December 30th, there were (then) currently due bills totaling an additional thirty-four thousand, six hundred and seventeen ($34,617) which it was the defendant's obligation to pay. These amounts are presently due to the plaintiff and to the creditors respectively.
Contrary to the defendant's assertions, the court finds that the orders entered by the court pursuant to the parties' April 8, 1998 agreement are clear and unambiguous. To the extent there may be any confusion on the defendant's part as to whether the estimated weekly amounts represent a cap, it is he and not the plaintiff who drafted the agreement, and he, not the defendant, who possessed greater knowledge in April, 1998 of the actual amount of the listed expenses. As the drafter, he bears the risk of interpretation. Similarly, he bears the burden of compliance.
In not making these payments, the defendant has failed to CT Page 3592 comply with the orders of the court.
Without conceding that he is not in compliance, the defendant argues that he is not in contempt because any deficiency in performance on his part is not wilful. In short, he claims an inability to pay. For sure, a determination of contempt requires a finding that a persons failure to pay a clear and unambiguous court order has been wilful and voluntary. To support his claim, the defendant offered testimony that he has a significant indebtedness to the Internal Revenue Service (IRS) and that his income has decreased since the entry of the order. The court is unpersuaded. The defendant's indebtedness to the IRS, due for tax years prior to 1998, was in existence and the amount was known by the defendant on April 8, 1998. Indeed, the indebtedness is reflected on his affidavit of the same date. Since April, however, the defendant has voluntarily commenced payments to the IRS in amounts greater than he had been paying in April. This unilateral action by the defendant, even if fiscally wise, is no bar to enforcement of the courts order. With respect to the defendant's claim that his income has been reduced since April, the defendant has presented a confused and varying portrait of his income. The defendant is a self-employed surgeon. In April, he filed a financial affidavit stated his weekly gross compensation to be eight thousand, four hundred and four ($8,404) dollars, and his net income to be four thousand, three hundred and ninety-seven ($4,397) dollars. By affidavit dated December 21, 1998, the defendant posited his weekly gross compensation to be nineteen thousand, six hundred and fifteen ($19,615) dollars, and his net earnings to be four thousand, one hundred and thirty-eight ($4,138) dollars. Assuming that the significant difference in the statement of his gross compensation is an accounting error, his weekly disposable income appears to be substantially unchanged from the date of the orders. And, his weekly disposable income, if believed, belies his claim that he is unable to afford the current court order.[3]
The defendant's failure to pay the court order is wilful and voluntary. As a consequence, he is in contempt of court. Notwithstanding any other coercive response from the court, and in the interim, the defendant shall immediately cause all bills relating to the household and to health care and tutoring for the children to be paid forthwith. Additionally, the matter is continued to the short calendar for April 20, 1999 for review.
The plaintiff seeks counsel fees in conjunction with CT Page 3593 processing this motion for contempt. Her request is reasonable. It is apparent to the court following the April 8, 1998 hearing the defendant determined that he had made a mistake, and that the payments were greater than he wished to pay. It is also clear that the defendant determined that expediting payments to the IRS was more important to his financial well-being than supporting his family in accordance with the existing court order. Because of the defendant's conduct, the plaintiff has been caused to incur substantial legal fees. While the court finds the fees set forth in the affidavit dated March 8, 1999 and filed by the plaintiff's counsel to be fair and reasonable, it is the courts intention to assess fees only for services rendered in conjunction with the motion for contempt and not to defend the motion to modify. Accordingly, counsel for the plaintiff is directed to file an amended affidavit setting forth those fees relating exclusively to the motion for contempt for the courts further response.
The court denies the plaintiff's request for interest on the amounts she has paid on the defendant's behalf and for those amounts due creditors. The defendant, of course, shall be responsible to pay any late charges or interest assessed directly by the creditors or service providers because of his failure to make timely payments to them.
Bishop, J.